**Morris SMITH, Plaintiff,**

v.

**John D. MURCHISON and Clint W. Murchison, Jr., individually and as partners d/b/a Murchison Brothers; Donald D. Harrington, Dan A. Kimball, Frank E. McKinney, Edgar T. Rigg and Alleghany Corporation, Defendants.**

**No. 68 Civ. 3791.**

United States District Court,
S. D. New York.

March 24, 1970.

Robert L. Bobrick, New York City, for plaintiff.

Debevoise, Plimpton, Lyons & Gates, New York City, for defendants John D. Murchison, Clint W. Murchison, Jr., and Murchison Bros., J. Asa Rountree, Hugh Rowland, Jr., New York City, of counsel.

Cahill, Gordon, Sonnett, Reindel & Ohl, New York City, for defendant Donald D. Harrington, Paul W. Williams, Raymond L. Falls, Jr., Abraham P. Ordover, New York City, of counsel.

## OPINION

FREDERICK van PELT BRYAN, District Judge:

A stockholder of Alleghany Corporation (Alleghany) brings this action individually, and derivatively and representatively on behalf of Alleghany and of stockholders similarly situated. Defendants are former officers and directors of Alleghany and the Corporation is a nominal defendant.

The complaint claims assorted alleged violations by the defendants of the Securities Exchange Act of 1934 and of the duties imposed upon corporate directors under state law. Jurisdiction is founded on Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and diversity of citizenship.

The only defendants who have been served with process are John D. Murchison, Clint W. Murchison, Jr., Murchison Bros. and Harrington. These defendants moved pursuant to Rule 12(b), Fed.R.Civ.P. to dismiss the complaint for want of jurisdiction over the person, improper venue and, in the alternative, pursuant to 28 U.S.C. § 1404(a), to transfer the action to the Northern District of Texas. The moving defendants were all served in Texas where they reside. Defendant John D. Murchison, however, was personally served in this District after these motions were made, and now limits the relief which he seeks to dismissal for improper venue or, in the alternative, for transfer of the action.

This is another chapter in the "flood of litigation that must be unparalleled in American corporation law" which has

arisen out of the affairs of Alleghany Corporation. Willheim v. Murchison, 342 F.2d 33, 35 (2d Cir. 1965). The flood continues.

The present action, to a substantial degree, parallels a proceeding brought by Randolph Phillips before the Securities and Exchange Commission arising out of transactions between the Murchisons and Gamble-Skogmo, Inc. relating to Alleghany stock. In the proceeding before the S.E.C., Phillips sought a determination that these transactions had the effect of transferring control of Alleghany from the Murchisons to Gamble-Skogmo. After a lengthy hearing, the S.E.C. determined, among other things, that the Murchisons had not transferred control of Alleghany to Gamble-Skogmo and that a premium was not paid for transfer of control. These findings were affirmed by the Court of Appeals for this circuit in Phillips v. S.E.C., 388 F.2d 964 (2d Cir. 1968).

Thereafter, the present action dealing with substantially the same transactions was brought by the plaintiff Smith for whose attorney Randolph Phillips is acting as "consultant".

### The Allegations of the Complaint

The complaint in this action is a prolix and confused document which attempts to lump in a single claim for relief claims for alleged violations of Section 10(b), 13(a), 14(a) and 16(a) of the Securities Exchange Act and the Rules and Regulations promulgated thereunder, as well as claims for alleged breach of fiduciary duty by defendant directors in violation of state law. Jurisdiction is predicated both on Section 27 of the Securities Exchange Act and on diversity of citizenship.

The basic transactions under attack are those which were involved in Phillips v. S. E. C., supra, whereby the Murchisons, acting for themselves and for others, sold to Gamble-Skogmo 1.5 million shares of Alleghany Common Stock and Gamble-Skogmo was granted a "call"

and the Murchisons a "put" with respect to an additional 1.5 to 2 million shares of Alleghany Common.

The complaint alleges that these transactions were part of a plan whereby the Murchisons and the other defendant officers and directors of Alleghany (1) used their positions to obtain a price for their Alleghany stock above what was available in the open market to the other Alleghany shareholders; (2) sold their positions as officers and directors for their personal profit; (3) obtained the protection of a "put" agreement with respect to Alleghany common stock and stock of Investors Diversified Services, Inc. (I.D.S.), Alleghany's chief subsidiary, without making this available to other shareholders; (4) used the resources of Alleghany to bolster the price of its shares in aid of the plan; (5) misled other stockholders as to the use of such resources; and (6) concealed these transactions from the other shareholders.

In the course of these transactions it is alleged, among other things, that the Murchisons (1) resigned as officers and directors of Alleghany and induced the other defendants to resign, by arranging for the purchase of their stock at a premium, so that officers and directors designated by Gamble-Skogmo could replace them; (2) induced Alleghany to spend $2 million to support a depressed market in Alleghany, IDS and New York Central stock, and concealed the reason for the use of such funds from the stockholders; (3) issued a proxy statement which failed to disclose that defendant Harrington, a nominee for director, intended to resign before the end of his one-year term in consideration for the purchase of his stock at a premium; (4) failed to disclose these transactions in reports and letters sent to stockholders; and (4) concealed them from their fellow directors.

As a result, the Murchisons are alleged to have received for their Alleghany stock from Gamble-Skogmo in excess of $7 million above the prevailing

market price and the other defendants amounts above the market price ranging from $340,000 to $1,800. These amounts are alleged to be "premiums" secured by defendants from the "sale" of their corporate offices.

Defendants' acts and omissions are alleged to have constituted "manipulative and deceptive devices and contrivances" and to have "operated as a fraud and deceit upon plaintiff and other shareholders of Alleghany" in violation of Sections 10(b), 13(a), 14(a) and 16(a) of the Securities Exchange Act and the Rules and Regulations thereunder. It is also alleged that these acts constituted "a violation of the fiduciary duties of said defendants to plaintiff and the other shareholders of Alleghany Corporation similarly situated under the common law and the General Corporate Law of Maryland."

Plaintiff seeks an accounting by defendants for the profits from the sale of their Alleghany stock and to recover such profits for the benefit of Alleghany and other stockholders, together with damages, and also counsel fees from Alleghany.

In moving to dismiss for want of personal jurisdiction and improper venue, the defendants' position can be summarized as follows:

The complaint fails to allege any claims under the Securities Exchange Act of 1934 on which relief can be granted. Thus, there is no federal subject matter jurisdiction under Section 27 of the Act. Plaintiff therefore was not authorized to serve defendants in Texas under Section 27 permitting service of process in any District "of which the defendant is an inhabitant or where the defendant may be found." Nor can venue be laid in this District under the liberal venue provisions of Section 27.

Thus, in the absence of any basis for federal question jurisdiction, whether or not there is in personam jurisdiction and proper venue must be resolved on the basis of the diversity claim based on state law. Defendants concede that, for the limited purposes of these motions, the complaint states a diversity claim for relief. They urge, however, that the requirements for service of process and for venue in a diversity case have not been met here and that the action must be dismissed for these reasons.

### Jurisdiction under the Securities Exchange Act

Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa, gives the District Courts

"* * * exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder."

Only if the complaint states a claim on which relief can be granted under the Securities and Exchange Act can service be properly effected and venue properly laid under § 27. Since the complaint charges violations of §§ 10(b), 13(a), 14(a) and 16(a) of the Act and the relevant Rules and Regulations, it is necessary to determine whether any claim for relief has been stated under any of these sections.

### Section 10(b) and Rule 10b–5

■ It is plain that Section 10(b) and Rule 10b–5, 17 C.F.R. § 240.10b–5, which implements that Section, do not reach every breach of fiduciary duty by a corporate director. O'Neill v. Maytag, 339 F.2d 764 (2d Cir. 1964). Section 10(b) expressly requires that the acts complained of must be "in connection with the purchase or sale, or any security". While this phrase has been interpreted liberally by the Court of Appeals of this Circuit, S. E. C. v. Texas Gulf Sulphur Co., 401 F.2d 833 (2d Cir. 1968) (en banc), cert. denied, 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756

(1969) [1] it has long been and still is the rule that 10b–5 extends "protection only to [a] defrauded purchaser or seller." Birnbaum v. Newport Steel Corp., 193 F.2d 461, 464 (2d Cir. 1952). Any doubts as to the continuing validity of this standing requirement, see Lowenfels, The Demise of the Birnbaum Doctrine, 54 Va.L.Rev. 268 (1968), were laid to rest in Greenstein v. Paul, 400 F.2d 580 (2d Cir. 1968), a post-Texas Gulf Sulphur case, where the Court of Appeals stated:

> "It has long been the rule in this circuit that to maintain an action under § 10(b) of the Act and Rule 10b–5 of the Securities and Exchange Commission the plaintiff must have been a seller of the stock involved. Birnbaum v. Newport Steel Corp., 193 F.2d 461 (C.A. 2, 1952), cert. denied 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952). Although criticized, Entel v. Allen, 270 F.Supp. 60, 70 (S.D.N.Y., 1967), it is still the rule at least insofar as actions for damages are concerned. Mutual Shares Corp. v. Genesco, Inc., 384 F.2d 540, 2 Cir., supra." 400 F.2d at 581.

The Court of Appeals again indicated the continuing validity of the Birnbaum "seller or purchaser" requirement in Iroquois Industries, Inc. v. Syracuse China Corp., 417 F.2d 963 (2d Cir. 1969). There, the court expressly rejected the suggestion of the S. E. C. that Birnbaum was no longer the law and should be overruled. The Court stated:

> "The *Birnbaum* rule recognizes the policy of Congress in enacting Section 10(b) and of the Commission in adopting Rule 10b–5, namely, the protection of defrauded purchasers and sellers. It is not the province of the courts to extend Section 10(b) to apply to transactions not intended to be covered by Congress. * * *

> "That the conduct averred in any given case may be reprehensible does not mean that a federal remedy must be furnished by judges. * * * *" Id. at 969.

In stockholder suits to recover for unlawful sales of control by corporate directors, the failure to allege a purchase or sale has been repeatedly held to be ground for dismissal of the complaint. See Birnbaum v. Newport Steel Corp., supra, Keers & Co. v. American Steel & Pump Corp., 234 F.Supp. 201 (S.D.N.Y. 1964); Chashin v. Mencher, 255 F.Supp. 545 (S.D.N.Y.1965); Christophides v. Porco, 289 F.Supp. 403 (S.D.N.Y.1968).

Plaintiff does not deny that only a defrauded purchaser or seller may sue under Rule 10b–5. He contends that he is suing derivatively on behalf of Alleghany Corporation which was a purchaser of stock. The only purchase by the Corporation alleged is the expenditure of $2 million in 1962 to buy common stock of Alleghany and its subsidiaries, I.D.S. and New York Central, on the open market. Construing the complaint most favorably to the plaintiff, as I must on this motion, it may be inferred that this purchase was made in a depressed market in order to support the market price of Alleghany while the Murchison transactions were going on.

In order to state a claim under Rule 10b–5, however, it must appear not only that a purchase or sale took place, but that there was a loss and that the loss flowed directly from the purchase or sale. See Hoover v. Allen, 241 F.Supp. 213 (S.D.N.Y.1965); Cohen v. Colvin, 266 F.Supp. 677 (S.D.N.Y. 1967); Superintendent of Ins. of St. of N. Y. v. Bankers Life & C. Co., 300 F.

---

1. In Texas Gulf Sulphur the Court of Appeals said:

"* * * [I]t seems clear from the legislative purpose Congress expressed in the Act, and the legislative history of Section 10(b) that Congress when it used the phrase 'in connection with the purchase or sale of any security' intended only that the device employed, whatever it might be, be of a sort that would cause reasonable investors to rely thereon, and, in connection therewith, so relying, cause them to purchase or sell a corporation's securities." 401 F. 2d at 860.

Supp. 1083 (S.D.N.Y.1969). Here, plaintiff alleges neither damages nor sufficient causal connection between the corporate purchase of securities and the premium sought to be recovered. It is not alleged that the price of the stock defendants caused Alleghany to purchase declined or that Alleghany suffered any loss or damage whatsoever by reason of such purchases. The sole element of recovery sought is the premium accruing to defendants by reason of the sale of stock to Gamble-Skogmo.

In Hoover v. Allen, supra, stockholders brought a derivative action against former directors of a corporation alleging violation of various sections of the Federal securities laws, including Rule 10b–5. The complaint charged defendants with inducing stockholders, by means of false and misleading statements, to sell their shares to the corporation thereby securing control of the corporation for defendants and enabling them to then commit acts of corporate waste. The court assumed that the complaint sufficiently alleged fraud within the purview of O'Neill v. Maytag, supra, and that the price at which the corporation purchased was artificially depressed. Nevertheless, the Court held:

> "Because, however, the Company *purchased*, rather than sold, at the fraudulently depressed price, the sellers and not the Company were the 'victims' of the alleged fraud. List v. Fashion Park, Inc., 340 F.2d 457, at 462–463. Indeed, the immediate effect of the company's purchasing at a price below value was to benefit, rather than injure, the Company.

> "Consequently, the Company has no cause of action under Section 10(b) predicated solely upon its purchase of its stock at a fraudulently lowered price. It follows that the derivative action under Section 10(b) premised on this theory cannot stand." 241 F.Supp. at 227. See also Cohen v. Colvin, supra, 266 F.Supp. at 683.

Similarly, in this case the failure to allege any damage or loss to the cor-

poration arising from the purchase is fatal to the claim under Rule 10b–5.

Plaintiff urges that defendants should not be permitted to benefit from their wrong and that to prevent this the premium which they received should supply the required damage element. This contention misses the point. The crucial question on this motion is whether a federal remedy is provided. We are not concerned at this point with whether or not plaintiff has a remedy under state law which does not have the "in connection with the purchase and sale of any security" requirement. Indeed, defendants do not deny that a claim under state law is stated.

■ Finally, even if it be assumed that premiums which defendants received on the stock they sold could constitute damage within the meaning of Rule 10b–5, the claim under the rule is defective for another reason. Here, the purchase by the corporation of the Alleghany, I.D.S., and New York Central common, had no direct causal relationship to the allegedly unlawful premium. Plaintiff may not convert a state law claim into a Rule 10b–5 claim simply by alleging that it was a defrauded party and that at some time a purchase or sale of a security was made. To permit plaintiff to do so would totally emasculate the purchaser or seller requirement of Rule 10b–5. It would open up the federal courts to any claim based on breach of fiduciary duty as long as an incidental stock transaction in any way related to the overall scheme. Only a few cases have dealt with requirement of causal connection between the securities purchase or sale and the alleged injury.

Hoover v. Allen, supra, appears to be the first to have faced this issue. The court there held that damages resulting from corporate waste were not the proximate result of the corporation's acquisition of its own securities pursuant to the defendant's plan to gain corporate control. The Court stated:

> "There is nothing inherent in the mere acquisition of corporate control

that would make acts of waste a necessary or probable result thereof. While it is logically true that 'but for' corporate control the alleged acts of corporate waste could not have been committed, the 'but for' test of causation has been fully · discredited as a basis for imposing liability, particularly when, as here, such a test would also be the sole justification for federal intervention in a cause of action otherwise squarely posited on violations of state law. In sum, fraudulent acquisition of corporate control is not the proximate cause of acts of corporate waste." 241 F.Supp. 213.

Thus, the court held that no corporate injury resulted from the purchase of stock by the corporation, which was the heart of the claimed Rule 10b–5 violation. The only result from the purchases was the acquisition of control by defendants and this did not injure the corporation. The only injury, the waste, was not the proximate result of the corporate purchases of stock.

Superintendent of Ins. of St. of N. Y. v. Bankers Life & C. Co., supra, involved a complicated scheme to take over a corporation by using the corporation's own assets in the process. With regard to the necessary relationship between a securities transaction and fraud under Rule 10b–5, the Court stated:

"In order to sustain a complaint alleging fraud under section 10(b) of the 1934 Act, it must appear with reasonable clarity from the face of the complaint either (1) that a purchase or sale of securities is at the crux of a fraudulent scheme; or (2) that inducing a purchase or sale of securities is the object of a fraudulent scheme; * * *
* * *

"The purity of the security transaction and the purity of the trading · process are the sole objectives of federal concern. Therefore, the consummation of a security transaction as a mere incident of a fraudulent scheme and the mere fact of injury caused by the fraud, in the absence of any pos-

sibility that the fraud might materially affect the purity of the security transaction and the purity of the trading process, would not make the fraud federally cognizable.

" * * * A federal claim is not pleaded by allegations that, in the course of a scheme to loot a corporation of its assets, certain security transactions occurred, when these transactions—though contaminated by the overriding evil intent to accomplish the ultimate looting—did not involve fraud or deceit in connection with the sale or purchase of a security." 300 F.Supp. at 1101.

In the case at bar the purchase by Alleghany of its own shares was at best only an incident in the broader scheme of selling a sizeable block of stock at a premium. Had Alleghany suffered loss on the shares it purchased, a 10b–5 violation may have been alleged. Damages might then be said to have occurred "in connection with the purchase or sale" of securities and it would be immaterial that the gravamen of the complaint was breach of fiduciary duty under state law. However, this complaint alleges only that the defendants obtained a premium and that a purchase was remotely involved. There is not a sufficient connection between the purchase and the premium to meet the requirements of the Rule.

I hold that no claim under § 10(b) and Rule 10b–5 upon which relief can be granted is alleged.

### Section 14(a) and Rule 14a–9

█ It is now settled that a private right of action including a derivative suit may be predicated upon a violation of the proxy rules promulgated under Section 14(a) of the Act. J. I. Case Co. v. Borak, Inc., 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964), Mills v. Electric Auto-Lite Co., 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (Jan. 20, 1970). The complaint in the case at bar alleges two omissions of fact in the proxy statement of March 12, 1962 caused to be circulated by John D. Murchison and Harrington. The first is

that it stated that Harrington was a nominee for director for the term of one year but failed to disclose that he intended to remain a director only until he received a premium for his stock.[2] The second is that it omitted to disclose that the Murchison Alleghany and I.D.S. stock, with a market value in excess of $75 million, was pledged as security for various loans and that a substantial market decline would force the Murchison's to dispose of the stock.[3]

■ In order to maintain an action under Section 14(a) as under Section 10(b), damage as well as causal connection between the false proxy statement and the damage sustained must be alleged. See Barnett v. Anaconda Co., 238 F.Supp. 766 (S.D.N.Y.1965); Eagle v. Horvath, 241 F.Supp. 345 (S.D.N.Y. 1965); Hoover v. Allen, 241 F.Supp. 213 (S.D.N.Y.1965).

■ The complaint in this case fails to allege either of these essential elements. There is no allegation here of causal connection between the alleged omissions from the proxy statement and the receipt of premiums by the defendants. As far as the failure to disclose that the Murchisons' stock was pledged, I am unable to perceive the slightest causal connection between that fact and the premium. The same thing is true with respect to the failure to disclose Harrington's alleged intention to resign as a director. It is not alleged that either Harrington or the other defendants would not have received premiums for their stock had Harrington not been elected or failed to resign. The agreement for the sale of stock by the Murchisons merely called for the Murchisons to turn over immediately two positions on the Board, when there were several available to the Murchisons for that pur-

pose. If it is claimed that a causal connection exists it has not been pleaded here.

■ Plaintiff suggests the alternative theory that the solicitation of proxies for the election of directors for one year created a contract between the directors and the shareholders by which the directors agreed to serve for one year. Defendants Harrington, Kimball and McKinney are charged with breaching such contracts by failing to serve as active directors for a full year. The Murchisons are apparently charged with inducing Harrington, Kimball and McKinney to breach those contracts. Plaintiff cites Brown v. Bullock, 194 F.Supp. 207, 231–232 (S.D.N.Y.1961) to support this novel theory. For several reasons that case is not in point. The only reference in the long and complicated opinion to a proxy contract is the statement that "[T]he solicitation and the grant of a proxy result in a contract conferring rights and imposing duties upon the proxy holder" 194 F.Supp. at 231–232. The statement or its significance is not further explained. The opinion goes on to hold that there is a derivative right of action for violation of the proxy provisions of the Investment Company Act of 1940.

The damages alleged in that case were excess fees charged to an investment company under an investment advisory contract. The shareholders had failed to terminate the unfair investment advisory contract because of material omissions in the proxy statements. Damages were thus the proximate result of false and misleading proxy statements and the complaint was upheld on that theory.

Even assuming that a proxy contract came into being, as plaintiff claims, this

2. It is not alleged that, when the proxy was sent, any of the other defendant directors did not intend to serve out their full terms.

3. While item 5(f) of Schedule 14A, 17 C.F.R. § 240.14a–101, requires the proxy statement to describe " * * * any pledge of securities * * * the opera-

tions of the terms of which may result in a change in control of the issuer," this did not become effective until February 16, 1966. In any event, there is no allegation of a change in control as a result of shares being pledged by the Murchisons or that any loss occurred because of a failure to disclose this.

in no way bridges the fatal gap in plaintiff's case under Section 14(a), for there is complete failure to allege any damage to the corporation or its stockholders flowing from a breach of the proxy contract, if such a breach occurred.

The complaint fails to state a claim upon which relief can be granted under Section 14(a) and the Rules and Regulations thereunder.

### Sections 13(a) and 16(a)

Section 13(a) requires that every issuer of securities registered on a national exchange file certain reports with the exchange and with the S.E.C. The complaint is devoid of allegations which would bring Section 13(a) into play and plaintiff has made no attempt to show that the section has any application to this suit. Even in the very doubtful event that a private right of action exists under § 13(a)[4], no issue has been presented as to that section and no claim for relief under that section is stated.

 Much the same can be said with respect to Rule 16(a) which requires the filing of certain reports concerning changes in stock ownership within 10 days after the close of the calendar month in which there has been a change in beneficial ownership of stock. The only allegation in the complaint having even remote reference to this section is that defendants "delayed for 60 days to five months the filing with the S.E.C. of the Form 4 reports required to be made within 30 days [of the transactions' completion]". Plaintiff has made no attempt to spell out the elements of any claim for relief under Section 16(a) even were there a private right of action under that section. In any event, there appears to be no such private right of action. Robbins v. Banner, Industries, Inc., 285 F.Supp. 758 (S.D. N.Y.1966).[5]

In sum, this is one of the growing number of cases in which plaintiff has striven mightily to stretch claims for breach of fiduciary duty of corporate directors under state law into claims for relief under the federal securities laws. Plaintiff thus attempts to mold his case into the pattern of federal jurisdiction. The plaintiff has failed in this attempt. No claims for relief under the Securities Exchange Act are stated. Plaintiff is relegated to whatever diversity claim arising under state law he may have.

### Venue on the Diversity Claim

Plaintiff's remaining diversity claim under state law which is characterized as one for breach of fiduciary duty by the defendants, is predicated, in essence, upon allegations that defendants received a premium for their Alleghany stock from Gamble-Skogmo in return for turning over seats on the Alleghany board to that purchaser. See Essex Universal Corporation v. Yates, 305 F.2d 572 (2d Cir. 1962) and cases there cited. While conceding that a claim for relief under state law is stated in the complaint, defendant John Murchison, who was served in this district and over whom there is concededly in personam jurisdiction, asserts that venue is not properly laid in this district. The other moving defendants, while questioning the validity of service of process upon them, also make the same contention.

Since the venue question must in any event be determined regardless of the claims by defendants Clint Murchison and Harrington as to validity of service, I turn to that question.

Under 28 U.S.C. § 1391(a) diversity actions involving transitory causes "may, except as otherwise provided by law, be brought only in the judicial district where all plaintiffs or all defendants reside, or in which the claim arose."

---

4. But see Kroese v. Crawford, C.C.H.Fed. Sec.L.Rep. ¶91262 (S.D.N.Y.1963).

5. But see Kroese v. Crawford, supra, and Chicago South Shore & South Bend R.R. v. Monon Railroad (64–66 C.C.H.Fed. Sec.L.Rep. ¶91525 (D.Ill.1965).

In the case of a natural person, residence means domicile. See 1 Moore Fed.Prac. ¶ 0.142 [5.–1] p. 1482. Here the plaintiff is domiciled in Pennsylvania. All of the defendants served with process are domiciled in Texas. None of the unserved defendants are domiciled in New York. Thus, this diversity case cannot be brought in this district under Section 1391(a) unless the claim arose here.

The diversity claim arises out of the transactions by which the defendants sold their stock to Gamble-Skogmo and are alleged to have turned over directorships to Gamble. The preliminary negotiations regarding these transactions took place in Chicago, Illinois. The preliminary agreement of August, 1962 and the final agreement of October, 1962 were reached and executed in Dallas, Texas. The delivery of and payment for the initial 1.5 million shares and the delivery of and payment for shares pursuant to the "put-call" arrangement were carried out in Dallas, Texas. All that occurred in New York were two preliminary negotiating sessions. It is apparent from this that the claim arose in Dallas, Texas and not in New York.

Thus, unless some exception is "otherwise provided by law" (28 U.S.C. § 1391 (a)), the action may not be brought in this district and venue is improperly laid here. There is no other provision of law which authorizes the action to be brought in this district. 28 U.S.C. § 1401, which enlarged venue in actions brought by a stockholder on behalf of a corporation, provides that such an action "may be prosecuted in any judicial district where the corporation might have sued the same defendants." But this section does not resolve plaintiff's venue problem. All that Section 1401 does is to give a shareholder the choice, in addition to those he already had at the time the section was enacted, of forums to which the corporation itself

could have resorted had it been the plaintiff. Greenberg v. Giannini, 140 F.2d 550, 552 (2d Cir. 1944); Philipbar v. Derby, 85 F.2d 27 (2d Cir. 1936). In the case at bar Alleghany Corporation could have brought suit in only one forum not otherwise available to this plaintiff. That would have been the place of the corporate residence under that portion of § 1391(a) authorizing suit where plaintiff resides. For venue purposes a corporate plaintiff resides only in the district in which it incorporated. See Suttle v. Reich Bros. Const. Co., 333 U.S. 163, 68 S.Ct. 587, 92 L.Ed. 614 (1948). Alleghany was incorporated in Maryland and, though it has offices in New York, Maryland is the place of its residence as a corporate plaintiff. Plainly, the choice of Maryland as an additional forum given to the plaintiff by Section 1401 does not help plaintiff to sustain venue in this case brought in the Southern District of New York.

Thus in this action none of the bases for venue authorized by §§ 1391(a) or 1401 are present in this district and venue was laid in the wrong district.

Since this is so, the next question is the disposition to be made of defendants' motions attacking venue. 28 U.S.C. § 1406(a) provides:

"The district court of a district in which is filed a cause laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

In my view, it is in the interest of justice to transfer the action to the district where it could have been brought, rather than to dismiss the action. That district is the Northern District of Texas.[6]

Since the claim arose in the Northern District of Texas, this diversity action could have been brought there under either § 1391(a) or § 1401. All of the moving defendants are domiciled in Tex-

---

6. Defendants' moving papers on their motion to transfer to the Northern District of Texas under § 1404(a) for the convenience of parties and witnesses indicate that the Northern District of Texas is a convenient forum.

as and were originally served there. Plainly, all of them are subject to personal jurisdiction in that state. The nominal defendant, Alleghany, an indispensable party, which has not questioned service, is subject to jurisdiction in that district under 28 U.S.C. § 1695.

It is unnecessary to decide the motions of defendants Clint Murchison and Harrington to dismiss for want of personal jurisdiction. Even if it were held that this Court lacked personal jurisdiction over these two defendants, this would not bar the transfer of the action as against them to the Texas district. Nor could the action be dismissed by the Texas Court as against them after it had been transferred there on the ground that this Court lacked personal jurisdiction over them. Goldlawr Inc. v. Heiman, 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1964).

I therefore hold that in the interests of justice the action will be transferred to the Northern District of Texas pursuant to 28 U.S.C. § 1406(a).

Settle order on notice.