O'Neill RYAN and United States Trust Company of New York, as Trustee of a Trust dated April 15, 1968 for the benefit of Sara Ryan HILL, Plaintiffs-Appellants,

v.

J. WALTER THOMPSON COMPANY, Defendant-Appellee.

No. 67, Docket 71-1358.

United States Court of Appeals, Second Circuit.

Argued Nov. 4, 1971.

Decided Nov. 18, 1971.

---

**16.** See also Penn v. Linden Crane Co., 326 F.Supp. 995 (S.D.Pa.1971).

Leo T. Kissam, New York City (Anthony S. Genovese, Robert A. Warren, Michael F. Fitzgerald and Kissam & Halpin, New York City, on the brief), for appellants.

Edward J. Ross, New York City (Miriam C. Feigelson and Breed, Abbott & Morgan, New York City, on the brief), for appellee.

Before WATERMAN, SMITH and TIMBERS, Circuit Judges.

PER CURIAM:

This case is another example of a trend we have observed with disturbing frequency, namely, invocation of the salutary anti-fraud provisions of the federal securities laws in cases where those provisions are wholly inappropriate and wide of the Congressional mark. Moreover, the vice of this practice is compounded here by engrafting upon the misplaced federal securities law claim a state law claim that, but for the federal gloss, should have been litigated in the state courts.

Appellants, O'Neill Ryan and the United States Trust Company of New York, as Trustee,[1] appeal from a judgment entered in the Southern District of New York, Inzer B. Wyatt, *District Judge*, 322 F.Supp. 307 (S.D.N.Y.1971), granting a motion by appellee, J. Walter Thompson Company (JWT), for summary judgment and dismissing the action brought by Ryan pursuant to Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (1970), and Rule 10b–5 thereunder, 17 C.F.R. § 240.10b–5 (1971), the complaint also having asserted a state law claim under the

---

1. Ryan's transfer in April 1968 to the United States Trust Company of certain JWT stock in trust for his daughter is of no significance here. Ryan and the Trust Company are treated as one for purposes of this appeal.

doctrine of pendent jurisdiction.[2] Since we agree with the District Court's application of the law to the undisputed facts, we affirm.

In view of the District Court's clear, comprehensive and detailed statement of the facts, 322 F.Supp. at 308–312, it is sufficient for our purpose merely to state the claims asserted and the District Court's rulings thereon with which we agree.

The gravamen of Ryan's grievance is that, following his retirement on January 31, 1966 as a vice-president and director of JWT, the latter on January 14, 1969 exercised its options to purchase Ryan's stock in JWT at the net asset value of $276,200 (excluding any value for good will), as compared to the $970,650 value said to be attributed to such stock (including good will value) after JWT's public offering of its stock in June 1969.

Ryan had acquired his stock while employed by JWT. During this period JWT sold its stock only to its officers and employees. All such stock was subject to certain restrictions the purpose of which was to enable JWT to buy back its stock, at net asset value, whenever a holder desired to sell or ceased to be an officer or employee.

Beginning in August 1968, JWT, needing additional working capital, took steps to sell some of its stock to the public through a public offering, removing the restrictive options on such shares. A registration statement and preliminary prospectus were filed with the SEC on March 28, 1969. On June 4, 1969, the public offering of 27% of JWT's shares took place. This resulted in changing JWT from 100% to 73% employee-owned.

Ryan's action in the District Court was brought to rescind his sale of JWT stock in January 1969 pursuant to JWT's exercise of its options. Ryan's essential claims in this action are (1) that, since JWT had taken steps to go public when the options were exercised in January 1969, such options were unenforceable as an unreasonable restraint upon alienation under New York law (state law claim); and (2) that JWT's failure to disclose its contemplated public offering prior to its repurchase of Ryan's stock constituted a violation of the anti-fraud provisions of the Securities Exchange Act of 1934 (federal law claim).

■ Since there is no basis for diversity jurisdiction, it is clear that there is no federal jurisdiction with respect to the state law claim referred to above unless pursuant to the doctrine of pendent jurisdiction. Although the parties on appeal have addressed themselves to this issue, we nevertheless have examined the record ourselves. Cf. Gem Corrugated Box Corp. v. National Kraft Container Corp., 427 F.2d 499, 501 n. 1 (2 Cir. 1970), and cases there cited. We agree with the District Court that it properly could exercise jurisdiction over the state law claim under the doctrine of pendent jurisdiction. And since we have discussed this subject recently, we see no need to dilate upon it here. See Leather's Best, Inc. v. SS. Mormaclynx, 451 F.2d 800, 809–811 (2 Cir. 1971).

■ With respect to the merits of the state law claim, the District Court, rejecting Ryan's contention that the options when exercised were invalid because their underlying purpose—employee ownership of the stock—was no longer required by JWT corporate policy, held under New York law that, regardless of the corporate policy underlying the option agreement, such agreement would be invalid only if it prevented transfer of the stock, as opposed to merely delaying transfer, as here, by giving the corporation a right of first refusal. We agree. Allen v. Biltmore Tissue Corp., 2 N.Y.2d 534, 161 N.Y.S.2d 418, 141 N.E.2d 812 (1957); Penthouse Properties, Inc. v. 1158 Fifth Avenue, Inc., 256 App.Div. 685, 11 N.Y.S.2d 417 (1st Dept. 1939). See also Rafe v. Hinden, 29 App.Div.2d 481, 288 N.Y.S.2d 662

---

2. The judgment of the District Court also dismissed JWT's counterclaim. No appeal has been taken from that part of the judgment.

(2d Dept. 1968), aff'd, 23 N.Y.2d 759, 296 N.Y.S.2d 955, 244 N.E.2d 469 (1968); Martin v. Graybar Electric Co., 285 F.2d 619 (7 Cir. 1961).

With respect to the Rule 10b–5 claim, the District Court held that, since Ryan was obligated to sell his shares to JWT in January 1969, whatever he knew or did not know regarding JWT's plans to go public was irrelevant. We agree. See Fershtman v. Schectman, 450 F.2d 1357, 1360 (2 Cir. 1971). Ryan's reliance upon SEC v. Texas Gulf Sulphur Co., 401 F.2d 833 (2 Cir. 1968) (en banc), cert. denied, 394 U.S. 976 (1969), is misplaced. Even under the broadest interpretation of the language of *Texas Gulf Sulphur*, Rule 10b–5 does not spread a comfortable canopy to keep Ryan out of the inclement weather.

In short, we affirm upon the well reasoned opinion of Judge Wyatt below. 322 F.Supp. 307 (S.D.N.Y.1971).

Affirmed.