**Patrick A. DUFFY and W. Ken Duffy, Plaintiffs,**

**v.**

**RANGER SECURITIES CORP. et al., Defendants.**

**No. 71 Civ. 1467.**

United States District Court, E. D. New York.

June 8, 1972.

W. Ken Duffy, pro se and for plaintiffs.

Dewey, Ballantine, Bushby, Palmer & Wood, New York City, for Pocono Downs, Inc. and others.

Sullivan & Cromwell, New York City, for E. & E. Securities, Inc.

Royall, Koegel & Wells, New York City, pro se.

Hart & Hume, New York City, for Schnader, Harrison, Segal & Lewis, and John Littleton.

Raichle, Banning, Weiss & Halpern, Buffalo, N. Y., for Sportservice Corp.

Matthew Tosti, Garden City, N. Y., for National Diversified Industries, Inc., George Weinstein, Ira J. Weinstein and Morris J. Weinstein.

D'Amato, Costello & Shea, New York City, for Grothius & Co.

Kaye, Scholer, Fierman, Hays & Handler, New York City, for Franklin National Bank.

Feldman & Ciotola, Nesquehoning, Pa., and Salon, Ortner, Yavers, Dershowitz & Raybin, New York City, for Shamrock Racing Association, Inc., James J. Dirkin, Jr. and Eugene Bartoli.

RE, Judge [*]:

By an order to show cause, the plaintiffs in this action initially sought a preliminary injunction barring Mr. and Mrs. Durkin, two of the forty or more defendants herein, from selling certain shares of stock of Pocono Downs, Inc. The defendants not only opposed the petition for the preliminary injunction, but also moved to dismiss the action on several grounds. Plaintiffs subsequently withdrew their request for the preliminary injunction, and, by consent, an order was signed dismissing the petition with prejudice.

From the amended complaint it would appear that plaintiffs' claim is founded upon an alleged option to purchase ten percent of the stock of Pocono Downs, Inc., a Pennsylvania corporation which owns and operates a race track in northeastern Pennsylvania.

The following may be gleaned from the voluminous documents and briefs submitted in this action:

The Pennsylvania Harness Racing Commission had announced its intention of awarding a license to conduct harness racing in northeastern Pennsylvania. Two groups organized corporations to seek this license. One was Pocono Raceways, Inc., and the other Anthracite Raceway, Inc. At the suggestion of the Harness Racing Commission a plan was devised whereby both groups could participate in the corporation which would be awarded the license.

Under the terms of this plan, which was consummated in August of 1962, the Pocono Raceway group was to receive options to purchase forty percent of the outstanding stock of Anthracite Raceway, Inc. These options were to be valid for sixty days following the award of the harness racing license to Anthracite, an event which took place on August 24, 1962. The options were issued in the names of Ross D. Miller, Charles Epstein, Robert C. Duffy (not a relation of the plaintiffs) and M. David Smeltz. The option issued to Smeltz for ten percent of Anthracite's shares, was not effectively exercised within the prescribed sixty-day period, and Anthracite refused to issue shares to Smeltz when he tendered payment after the expiration of the option.

In 1963 Anthracite changed its name to Pocono Downs, Inc., and it has since been recapitalized several times resulting in an increase both in the number of authorized shares, and the number of shares actually issued.

Basically, plaintiffs' claim for relief is founded upon the assertion that they were the beneficial owners of the option which was issued by Anthracite to Smeltz. Apparently, it is from this Smeltz option that plaintiffs assert a claim or right to subscribe to ten percent of the shares of Pocono Downs, Inc.

[*] Judge, U. S. Customs Court, sitting by designation.

This, it would appear, is the basis upon which plaintiffs predicate their request for relief that the court order that the Smeltz option be exercised in their favor.

Plaintiffs' ownership of the option, which admittedly was issued in the name of M. David Smeltz, is in serious dispute. It has been the subject of various litigations in the courts of Pennsylvania, some of which are still pending. From the submissions it would seem that this court is the fifth judicial forum in which the ownership of the Smeltz option has been presented for adjudication.

It is noted further that Smeltz, a party in the Pennsylvania litigation, is not a party in the present action. Clearly, therefore, any determination of the crucial issue of the stock option might well be prejudicial to Smeltz who has commenced suit in Pennsylvania asserting his ownership of the option. Moreover, it is beyond the power of this court to issue a judgment which would be binding upon Smeltz and dispositive of this litigation. Hence, several defendants have properly indicated that any attempt at a final adjudication in this action would be inequitable since they may likely be subjected to additional lawsuits by Smeltz.

In view of the withdrawal and dismissal with prejudice of the request for the preliminary injunction, no useful purpose will be served in discussing the various grounds which required its dismissal. Suffice it to say that, even apart from the equitable considerations which barred the granting of the equitable relief sought, the opposing motion papers demonstrated clearly that plaintiffs had made no showing that they were likely to succeed on the merits of the action. Indeed, it seemed evident from the pleadings that plaintiffs had not pleaded a valid cause of action or one upon which this court could have granted relief.

Devoid of gloss, plaintiffs seek a determination of their asserted ownership of an option contract issued to another person in 1962 in the state of Pennsylvania. The defendants, therefore, in their affidavits, state that plaintiffs have not pleaded a valid cause of action under federal law; that there is no proper venue in the Eastern District of New York; that the cause of action is barred by the statute of limitations; and that plaintiffs are presently seeking similar relief under Pennsylvania law in the courts of that state. For the foregoing, and other additional and specific infirmities, the defendants have moved to dismiss this action.

Some of the defendants have raised defenses specially applicable to them in support of their motion to dismiss. For example, the defendants National banks indicate that venue in this District is improper as to them under clear and mandatory provisions of the National Bank Act. They cite Section 94 of that Act, and other controlling authorities, to show that a National bank may be sued only in the District in which it is established. 12 U.S.C. § 94; Mercantile National Bank at Dallas v. Langdeau, 371 U.S. 555, 83 S.Ct. 520, 9 L.Ed.2d 523 (1963); Cope v. Anderson, 331 U.S. 461, 67 S.Ct. 1340, 91 L.Ed. 1602 (1947); Klein v. Bower, 421 F.2d 338 (2 Cir. 1970); Bruns, Nordeman & Co. v. American National Bank and Trust Co., 394 F.2d 300 (2 Cir. 1968), cert. denied, 393 U.S. 855, 89 S.Ct. 97, 21 L.Ed.2d 125 (1968).

Whether plaintiffs' claim be regarded as one based on contract, or sounding in tort for fraud, practically all of the defendants urge that the claim is barred by the applicable statutes of limitation.

Since it would seem clear that plaintiffs had full knowledge of the matters of which they now complain, as far back as 1962, the defense of the statute of limitations is pleaded with great vigor. That plaintiffs had knowledge of the facts may be gleaned from a letter dated October 31, 1962 written by W. Ken Duffy to Anthracite Raceway, Inc. In this letter, in which Duffy speaks of

"the pattern of the conspiracy to defraud", he complained of Anthracite's refusal to issue to him shares under the option held by Smeltz.

Subsequent to the oral argument of the various motions, plaintiffs stipulated to the dismissal with prejudice of their action as to certain defendants. These stipulations have been approved by the court. After attempts to effect stipulations to dismiss as to all defendants proved fruitless, the remaining defendants pressed their motion to dismiss pursuant to Rule 12(b) of the Federal Rules of Civil Procedure.

Although at one point in these proceedings plaintiffs moved for a voluntary dismissal of the action, pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure, when confronted with a request for costs and reasonable attorneys fees by some of the defendants, the motion was withdrawn. In lieu of the motion for voluntary dismissal, during oral argument plaintiffs moved to stay the present action until "the related state actions are determined". To their motion to dismiss, certain defendants have added a request for costs and reasonable attorneys fees pursuant to Section 11(e) of the Securities Act of 1933.

■ Plaintiffs' claim to relief rests upon the assertion that they are the beneficial owners of the option issued to Smeltz. From this averment they claim a right to subscribe to ten percent of the shares of Pocono Downs, Inc., and seek to have this court order that the 1962 Smeltz option be exercised in their favor. No reason is advanced to explain why the option was issued in the name of Smeltz. Instead of setting forth the events surrounding the 1962 option, plaintiffs make vague allegations of fraud and conspiracy against every person or entity who has had any connection or relationship to Pocono Downs, Inc., or its predecessors. It is clear that the allegations of fraud do not set forth the circumstances constituting the fraud with the degree of specificity contemplated by Rule 9(b) of the Federal Rules of Civil Procedure.

That the Smeltz option is at the core of this litigation cannot be denied. Yet, it is conceded that Smeltz is presently maintaining an action against Pocono Downs, Inc., in a court in Pennsylvania, in which Smeltz asserts that he is the sole owner of the option. Nevertheless, in an attempt to invoke federal jurisdiction, plaintiffs have included in their complaint allegations that the prospectus issued by Pocono Downs, Inc., in a 1965 public offering of its securities, contained material misstatements and omissions. The public offering took place three years after the disputed option, and one of the plaintiffs admitted to the court that he never received the prospectus that contained the alleged untruths and omissions. On the facts presented it is impossible to assert reliance upon the alleged misrepresentations that induced the purchase of stock since none has been purchased. Birnbaum v. Newport Steel Corp., 193 F.2d 461 (2d Cir. 1952); Mutual Shares Corp. v. Genesco, Inc., 384 F.2d 540 (2d Cir. 1967); List v. Fashion Park, Inc., 340 F.2d 457 (2d Cir. 1965), cert. denied, sub nom. List v. Lerner, 382 U.S. 811, 86 S.Ct. 23, 15 L.Ed.2d 60 (1965); Greenstein v. Paul, 275 F.Supp. 604 (S.D.N.Y.1967), aff'd, 400 F.2d 580 (2d Cir. 1968).

No connection can be seen between the 1962 disputed option and the 1965 public offering. Since there is no allegation that plaintiffs purchased any of the securities in the public offering, or any securities at all of Pocono Downs, Inc., the inference is inescapable that the allegations pertaining to the public offering are extraneous, and are made for the sole purpose of invoking federal jurisdiction.

There being no diversity of citizenship, plaintiffs seek to establish this court's jurisdiction by alleging violations of the Securities Act of 1933 and the Securities Exchange Act of 1934. The anti-fraud provisions of the federal securities laws, upon which plaintiffs

would have federal jurisdiction hinge, do not apply in the case at bar. Not only are the pleadings totally inadequate in alleging what constituted the misstatements or omissions, but more important still, plaintiffs do not allege that they have purchased any securities.

For plaintiffs to assert a cause of action under Section 12 or Section 17 of the Securities Act, they must have purchased some of the securities offered to the public. At this late date it can not be doubted that only buyers of securities are the beneficiaries of federal protection under the laws cited, and not parties admittedly not buyers. Superintendent of Insurance of State of New York v. Bankers Life and Casualty Co., 430 F.2d 355 (2d Cir. 1970); Iroquois Industries, Inc. v. Syracuse China Corp., 417 F.2d 963 (2d Cir. 1969), cert. denied, 399 U.S. 909, 90 S.Ct. 2199, 26 L. Ed.2d 561 (1970); Greater Iowa Corp. v. McLendon, 378 F.2d 783 (8th Cir. 1967); Kellman v. ICS, Inc., 447 F.2d 1305 (6th Cir. 1971); Barnes v. Osofsky, 373 F.2d 269 (2d Cir. 1967).

Since the plaintiffs are not purchasers the same infirmity would apply to a cause of action under Section 10(b) of the Securities Exchange Act. Herpich v. Wallace, 430 F.2d 792 (5th Cir. 1970); Kahan v. Rosenstiel, 424 F.2d 161 (3rd Cir. 1970), cert. denied, sub nom. Glen Alden Corp. v. Kahan, 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290 (1970); Vanderboom v. Sexton, 422 F. 2d 1233 (8th Cir. 1970), cert. denied, 400 U.S. 852, 91 S.Ct. 47, 27 L.Ed.2d 90 (1970); see also Hirsh v. Merrill, Lynch, Pierce, Fenner & Smith, Inc., 311 F.Supp. 1283 (S.D.N.Y.1970); Smith v. Murchison, 310 F.Supp. 1079 (S.D.N.Y.1970); Boone v. Baugh, 308 F.2d 711 (8th Cir. 1962).

Only recently the Court of Appeals for the Second Circuit, in a per curiam opinion, made reference to the trend that it has observed "with disturbing frequency, namely, invocation of the salutary anti-fraud provisions of the federal securities laws in cases where those provisions are wholly inappropriate and wide of the Congressional mark." Ryan v. J. Walter Thompson Co., 453 F.2d 444 (1971).

It is of particular interest to note that the court added:

"Moreover, the vice of this practice is compounded here by engrafting upon the misplaced federal securities law claim a state law claim that, but for the federal gloss, should have been litigated in the state courts." *Ibid.*

In the case at bar, nothing in the pleadings would permit a finding that the public offering was in any way connected with the disputed option, or the alleged scheme to defraud. Consequently the 1965 public offering does not support the jurisdictional allegations of the complaint which purport to give this court jurisdiction by virtue of the securities laws of the United States.

In view of the court's finding that plaintiffs have not stated a claim under the laws of the United States, nor one over which this court may properly exercise jurisdiction, it is unnecessary to pass upon any of the other infirmities made evident by the pleadings.

It is the determination of the court that plaintiffs' motion for a stay is denied; that the motions of certain defendants for the allowance of attorneys' fees are also denied; and that the motions of the defendants to dismiss the action with prejudice are hereby granted with costs.