Mrs. Frania Tye LEE

v.

**Ray Lee HUNT, Testamentary Executor of the Ancillary Succession of H. L. Hunt.**

**Civ. A. No. 75–423.**

United States District Court, M. D. Louisiana.

April 8, 1976.

Wallace A. Hunter, Roger M. Fritchie, L. Michael Cooper, Durrett, Hardin, Hunter, Dameron & Fritchie, Baton Rouge, La., for plaintiff.

Lawrence E. Donohoe, Jr., Davidson, Meaux, Onebane, Donohoe, Bernard, Torian & Diaz, Lafayette, La., D. L. Case, Jackson, Walker, Winstead, Cantwell & Miller, Dallas, Tex., for defendant.

E. GORDON WEST, District Judge:

In this case, the plaintiff, Mrs. Frania Tye Lee, seeks to be recognized as the putative wife of the deceased Mr. H. L. Hunt, and as such to be declared to be the owner of one-half of all property acquired during the existence of the alleged putative marriage. The defendant, Ray Lee Hunt, as Executor of the Estate of H. L. Hunt, moves the Court to dismiss this suit for lack of jurisdiction or alternatively, to abstain in favor of a State Court determination of the issues, or as a third alternative, to remove this case to the United States District Court for the Northern District of Texas, Dallas Division. The plaintiff responds to this motion urging the Court to exercise jurisdiction over the claim, or alternatively, to transfer it to the Western District of Louisiana, Shreveport Division. Exhaustive briefs have been filed by both parties, and extended oral argument has been heard. After careful consideration of the thorough and scholarly presentation made by counsel for both parties, the Court concludes, for the following reasons, that this case must be transferred to the United States District Court for the Northern District of Texas, Dallas Division.

The questions raised as to jurisdiction and the application of the doctrine of abstention should be left for determination by that Court.

Plaintiff alleges that on November 11, 1925, she married the now deceased H. L. Hunt, who was known to her at that time as Franklin Hunt. She claims to have married him in the State of Florida, and she further alleges that the marriage records pertaining to that marriage are lodged in the courthouse in Hillsboro County (Tampa) Florida. She claims that some time in early 1926 she and Mr. Hunt moved their matrimonial domicile from Florida to Shreveport, Louisiana, where they remained until 1930. In that year she alleges that they again moved their matrimonial domicile, this time to Dallas, Texas, where it remained until May of 1934. Plaintiff alleges that at that time she learned for the first time that the man known to her as Franklin Hunt, her alleged husband, was actually Mr. H. L. Hunt and that he had another living wife, Lyda Bunker Hunt, whom he had married in 1914. Upon learning this, the alleged putative marriage was apparently terminated and the plaintiff moved and lived in several different places until 1944 or 1945 when she moved and established her residence and domicile in Atlanta, Georgia. She lived in Atlanta, Georgia continuously for approximately thirty years until November 3, 1975, on which date, admittedly on advice of her attorneys, she moved from Atlanta, Georgia to Baton Rouge, Louisiana, for the purpose of filing this suit. On November 11, 1975, eight days after she physically moved to Baton Rouge, Louisiana, she filed this suit claiming to be a citizen of the State of Louisiana, with her domicile in Baton Rouge, Louisiana. Counsel for the plaintiff readily admits that the prime motivation for plaintiff's moving to Baton Rouge was this law suit. They readily admit that they wanted to bring this suit in Baton Rouge, where they maintained their offices, and that they wanted the plaintiff living in Baton Rouge so that she would be readily available to them on a day to day basis during the pendency of the suit. They strenuously argue that the motive for moving to Baton Rouge is completely immaterial so long as the plaintiff's domicile was, in fact, established in this city. But when the plaintiff's allegation of a Baton Rouge domicile is challenged, the burden is, of course, on her to establish that she did in fact move her domicile as well as her residence to Baton Rouge. See *Welsh v.*

*American Surety Co. of New York,* 186 F.2d 16 (CA5 1951). This, we believe, she has failed to do.

■ For venue purposes, and for the purposes of establishing diversity of citizenship for jurisdictional purposes, a person is a resident only where he is a citizen, is domiciled, and makes his permanent home. 1 *Moore's Federal Practice* ¶ 0.142[5.–1–2] p. 1392 (1974); *King v. Wall & Beaver Street Corp.,* 79 U.S.App. D.C. 234, 145 F.2d 377 (1944); *Smith v. Murchison,* 310 F.Supp. 1079 (S.D.N.Y. 1970).

■ But plaintiff says that she meets all of these requirements for the establishment of her domicile in Baton Rouge. She says she has leased an apartment in Baton Rouge; has moved her personal possessions here; has registered to vote and has actually voted here; has applied for a driver's license here; has her granddaughter living with her here and has moved the contents of her safe deposit box to a bank in Baton Rouge. All of these things were, in fact, done, but it is quite clear that they were carefully and meticulously done in a purely self-serving endeavor to make it appear, on the surface, that she had actually in fact established a Baton Rouge domicile. There is no evidence to show that these things were done in the eight days between the time of her arrival in Baton Rouge and the time of filing this suit. Residence [domicile] under Title 28, United States Code, Section 1391(a) must be determined as of the time of the commencement of the action. *Lipp v. Janson,* 198 F.Supp. 195 (E.D.Pa.1961). While the plaintiff's actions after the commencement of the suit may be indicative of her intent at the time of filing the suit, we believe that in light of all of the circumstances, her actions after the filing of the suit as well as her actions prior thereto, fail to establish the fact that on November 11, 1975, or indeed at this present moment, she had or has an intention to create a domicile, as distinguished from a simple residence, in Baton Rouge. All of these things which

the plaintiff shows she has done since coming to Baton Rouge are things which she would quite naturally do if she intended to reside here for the length of time that she anticipates this case will consume before it is terminated. But doing those things does not, of itself, establish an intent to remove her domicile from Atlanta, Georgia to Baton Rouge, Louisiana. Admittedly the move to Baton Rouge was for the sole purpose of bringing this suit in the Middle District of Louisiana. There can be little doubt from the record that the plaintiff does not now, nor ever has had an intent to make Baton Rouge her permanent home. For over thirty years prior to the bringing of this suit, she has lived in Atlanta, Georgia. She continues to maintain a home in Atlanta; she continues to maintain a safe deposit box in an Atlanta bank; and when her deposition was taken she testified as follows:

"Q. Why did you take the apartment here?.

"A. On the advice of my attorneys so that I could be here whenever they need me. And I like Baton Rouge now so much.

"Q. Do you know what you're going to do when the lawsuit is over, about where you're going to live?

"A. I'll take you all to Europe.

"Q. O.K. Good.

"A. I don't mean to be so silly, but—

"Q. Do you hope to go back to Atlanta where your family and friends are?

"A. I don't know. I like Baton Rouge so very, very much; I have met some very nice people.

"Q. At this time you just don't know where you will live when this is over; is that it?

"A. That's right, but—

"Q. Do you still have a house or a home in Atlanta?

"A. Yes, but I'm going to stay in Baton Rouge until I see this—

"Q. See this lawsuit over?

"A. Yes, sir."

 This, we must conclude, falls far short of establishing an intent to make Baton Rouge her permanent home. As was said in *Welsh v. American Surety Co. of New York,* 186 F.2d 16 (CA5 1951):

" \* \* \* Now, it is elementary that, to effect a change of one's legal domicile, two things are indispensable: First, residence in the new locality; and second, the intention to remain there. The change cannot be made, except *facto et animo.* Both are alike necessary. Either without the other is insufficient. Mere absence from a fixed home, however long continued, cannot work the change. There must be *animus* to change the prior domicile for another. Until the new one is acquired, the old one remains. \* \* \*

"Declarations of intention to establish residence in a particular locality are of course to be given full and fair consideration, but like other self serving declarations may lack persuasiveness or be negatived by other declarations and inconsistent acts." (186 F.2d 17–18.)

Any inference that could be drawn from the plaintiff's activities tending to show an intent to establish a legal domicile in Louisiana is clearly negatived by her own specific declarations and inconsistent acts.

Her stated purpose in moving to Baton Rouge was to bring this suit here. She did, in fact, file the suit only eight days after moving to Baton Rouge. Her present intention, as stated by her, is to "stay in Baton Rouge until I see this—lawsuit over." Neither this stated purpose nor the declared intention considered separately or together, constitute a sufficient showing of intent to effect a change of domicile from Atlanta, Georgia to Baton Rouge, Louisiana. Since a new domicile has not been acquired, the old one remains. See also, *Mas v. Perry,* 489 F.2d 1396 (CA5 1974).

 Plaintiff argues that her moving to Baton Rouge was not done to create diversity because there would still be diversity if it were determined that plaintiff is a resident of Florida, Georgia, or Louisiana. This, of course, is true and would remain true if there are no indispensable parties who are citizens of the state of her domicile who have not yet been joined as parties to this suit. The question before us now, however, is not one of jurisdiction, but one of venue. Title 28, United States Code, Section 1391(a) provides:

"(a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in the judicial district where all plaintiffs or all defendants reside, or in which the claim arose."

Since, for the purposes of this venue statute, residence means domicile, *King v. Wall & Beaver Street Corp.,* supra; *Smith v. Murchison,* supra, and since we have determined that the plaintiff is not, in fact, domiciled within the Middle District of Louisiana, her case can be brought here only if "all of the defendants" reside (are domiciled) here or if the "claim arose" here. Since the plaintiff affirmatively alleges that the defendant, Ray Lee Hunt, "is a resident and citizen of the State of Texas," the only remaining basis of laying venue in this District would be that the claim arose here. But this is obviously not so. The basis of the plaintiff's claim is that she contracted a putative marriage with Mr. H. L. Hunt. That marriage, according to the plaintiff's allegations, was contracted and consummated in the State of Florida. Her alleged living together with Mr. Hunt for a short period of time in Shreveport, Louisiana was not the act that produced the putative marriage. If such a marriage was consummated, it first came into being in the State of Florida where the alleged marriage ceremony was performed. There is no contention that the plaintiff contracted a marriage in Louisiana. It is only contended that some time after the plaintiff contracted and consummated her marriage to Mr. Hunt in Florida, she, together with Mr. Hunt, moved their matrimonial domicile to Shreve-

port, Louisiana, where it remained for about four years. If her alleged marriage is to be recognized by Louisiana, or any other state, it is not because the plaintiff and her alleged husband established matrimonial domiciles in those states. It would be recognized because, and only because it was a marriage validly contracted in the State of Florida. There is no contention that a marriage ceremony was performed between the plaintiff and Mr. Hunt in the State of Louisiana. Such a ceremony is a necessary ingredient of a valid marriage, whether it be legal, or putative, contracted in the State of Louisiana. Thus, the acts which gave rise to her alleged marriage were those acts which took place in the State of Florida. If, as the plaintiff contends, the main purpose of this suit is to determine her true marital status during the years 1925 through 1934, her claim to being the putative wife of the late Mr. H. L. Hunt during those years arose in the State of Florida on November 11, 1925. But even if the establishment of a matrimonial domicile in Shreveport, Louisiana, somehow had a bearing on whether or not she should be recognized as the putative wife of H. L. Hunt, that would in no way involve the Middle District of Louisiana. This District has no connection whatsoever with the case except that the plaintiff moved here temporarily for the expressed purpose of trying to invoke the jurisdiction of this Court. No party to this suit is domiciled in this District and the claim did not arise in this District. Thus, the Middle District of Louisiana is simply not a proper venue for a hearing of this matter. For this reason the case should be removed to another District in which it could have been filed to start with. If the plaintiff has a right to invoke the jurisdiction of a Federal Court in this matter, under Title 28, United States Code, Section 1391(a), she could file her suit in Georgia, where she has her domicile; in Florida where her cause of action apparently arose, or in Texas where the defendant has his domicile. The problems of service of process are apparent in Georgia and Florida, but no such problem is present in Texas. The defendant is amenable to service of process in Dallas, Texas, where he has his domicile, and the requirements of Title 28, United States Code, Section 1391(a) would be met by the filing of this suit in the Northern District of Texas, Dallas Division. These reasons, in the opinion of this Court, compel a transfer of this case to that Court.

Title 28, United States Code, Section 1406(a) provides that:

"(a) The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

While the defendant seeks to have this case dismissed on the grounds of improper venue, the Court is of the opinion that the ends of justice will best be served by transferring, instead of dismissing, this suit.

But there are other reasons, equally compelling, which dictate that this case should be transferred to the Northern District of Texas even if the Court had concluded that venue was properly laid in the Middle District of Louisiana.

Title 28, United States Code, Section 1404 provides that:

"(a) For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

Other than the plaintiff having elected to bring her suit here, there is nothing else to connect this District with her litigation. There is little doubt but that her suit was brought here for the convenience of her attorneys, whose offices are located in Baton Rouge, rather than for the convenience of the parties or the witnesses. When the plaintiff changed her place of residence for the stated pur-

pose of bringing this suit, she could, of course, just as conveniently have established a residence in Dallas, Texas or elsewhere had she elected to do so. The real convenience that resulted from her move to Baton Rouge and from her bringing her suit here was, of course, to her counsel. While it is completely understandable why her counsel would prefer to bring this suit in the city wherein their offices are located, nevertheless, we cannot overlook the fact that the convenience of counsel is not one of the considerations to be accorded weight in connection with a Section 1404 transfer. See *Solomon v. Continental American Life Ins. Co.*, 472 F.2d 1043 (CA3 1973); *United Consolidated Industries, Inc. v. General Motors Corp.*, 343 F.Supp. 476 (E.D.Pa.1972); *Xerox Corp. v. Litton Industries, Inc.*, 353 F.Supp. 412 (S.D.N.Y. 1973); *Greyhound Computer Corp. v. International Business Machines*, 342 F.Supp. 1143 (D.C.Minn.1972).

The defendant resides in Dallas, Texas. The heirs and legatees of the deceased H. L. Hunt, who may well be found to be indispensable parties to this suit, and who will at least be prospective witnesses in this case, live within the Northern District of Texas. The plaintiff's most recent alleged matrimonial domicile was in Dallas, Texas. An issue likely to be raised at some point during this litigation is whether or not the plaintiff entered into a prior settlement agreement respecting the rights she now asserts here. The attorney who allegedly represented the plaintiff in those negotiations, and who has been characterized as perhaps plaintiff's most important witness, lives in Palestine, Texas, only about 100 miles from Dallas. The Probate Court having jurisdiction over the estate of the deceased H. L. Hunt, and the Court which must ultimately hand down any judgments required in connection with the distribution of his estate is located in Dallas, Texas. Thus all of these witnesses and potential parties reside in or near Dallas, Texas. Three of the witnesses whom plaintiff indicates she may call in this case live in New Orleans, Louisiana. Baton Rouge, Louisiana is no more accessible from New Orleans than is Dallas, Texas. Plaintiff's sister, Jennie Stovall, a prospective witness, lives in Houston, Texas. Dallas is more accessible to her than is Baton Rouge. Plaintiff indicates that she might call as witnesses two sisters who reside in Buffalo, New York. Dallas, Texas is certainly as accessible, if not more so, to those persons traveling by air from New York than is Baton Rouge. Aside from the plaintiff herself, and possibly a nephew who allegedly lives in Baton Rouge, there are no other plaintiff witnesses to whom Baton Rouge would be more accessible than Dallas. And as far as the defendant and defense witnesses are concerned, hearing this case in Baton Rouge would actually create a hardship that could be averted by transferring the case to Dallas. It all boils down to the very simple fact that the Middle District of Louisiana has absolutely no connection whatsoever with this case, and as stated in *Gulf Oil Corporation v. Gilbert*, 330 U.S. 501, 508–509, 67 S.Ct. 839, 843, 91 L.Ed. 1055, 1062 (1947) " * * * (j)ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." Neither the people of this community, the prospective witnesses, nor the defendants should be imposed upon by trying this case in Baton Rouge when there is another more logical and more convenient forum available to which the suit can and should be transferred. The interests of justice require that this be done.

For these reasons, an order will be entered in this case transferring this matter to the United States District Court for the Northern District of Texas, Dallas Division.