**MORAN PIPE AND SUPPLY COMPANY, INC., Plaintiff,**

v.

**Louis SCHWARTZ, an individual, Louis Schwartz' Railwater Terminal Co., Inc., Norman Thompson, an individual, and Ben Lomond, Inc., Defendants.**

No. 87–399–C

United States District Court, E.D. Oklahoma.

March 9, 1988.

Ed Cadenhead, Seminole, Okl., for plaintiff.

Ed Gage, Muskogee, Okl., for defendants.

## ORDER

H. DALE COOK, Chief Judge.

Now before the Court for its consideration is the motion to dismiss this action for lack of *in personam* jurisdiction and for improper venue, pursuant to F.R.Cv.P. 12(b)(2) and (3), brought by the defendants, Louis Schwartz (Schwartz), Louis Schwartz' Railwater Terminal Co., Inc. (Railwater), Norman Thompson (Thompson) and Ben Lomond, Inc. (Lomond). Plaintiff Moran Pipe and Supply Company based jurisdiction upon diversity of citizenship between the parties, as provided in 28 U.S.C. § 1332. Plaintiff alleges that it is a citizen of Oklahoma, that defendants Schwartz and Railwater are citizens of Washington, and that defendants Thompson and Lomond are citizens of Alaska and Utah, respectively. Defendants do not deny the diversity of citizenship, but contend they do not have "minimal contacts" within Oklahoma to justify this Court's exercise of *in personam* jurisdiction over them.

An agreement for the sale of used pipe is the transaction in issue here. The parties agree that the plaintiff's president telephoned Schwartz, the president of Railwater, on March 5, 1987, to discuss the plaintiff's purchase of the pipe from Railwater. The telephone call was initiated at the plaintiff's offices in Seminole, Oklahoma and received at Railwater's offices in Seattle, Washington. On March 9, 1987, plaintiff sent Railwater a letter, allegedly setting forth the terms of the agreement, for Schwartz' review and signature, if he agreed to the terms in the letter. Schwartz signed his assent to the terms set forth in the letter on March 13, 1987. The letter provided price and quantity of pipe terms, but did not state the manner in which payment for the pipe was to be made. On March 9, 1987, plaintiff sent its check in the amount of $10,000. to Railwater, which plaintiff alleges was a partial payment for the pipe. Schwartz admits receiving that check, cashing it, and retaining the funds. Plaintiff also sent Railwater a check in the amount of $10,000. on April 9, 1987, also allegedly in partial payment for the pipe. Schwartz likewise admits receiving that check, cashing it, and retaining those funds.

Certain facts are disputed by the parties. Most critically, the plaintiff contends that Schwartz made the initial contact with the plaintiff's president in February, 1987, to advise him of the availability of the used pipe and to see if the plaintiff was interested in purchasing some of the pipe. Plaintiff states that it sent one of its employees to inspect the pipe in Alaska on March 2, 1987, in response to the February contact by Schwartz, and that the telephone call to Schwartz and Railwater was made only after the plaintiff's employee had inspected

the pipe. Defendants deny plaintiff's contention, asserting that they have not solicited any business in Oklahoma, and that plaintiff's president learned of the availability of the pipe through other industry sources, rather than by Schwartz' contacting him. Plaintiff points to two prior business dealings with Railwater and Schwartz as evidence of an ongoing business relationship between plaintiff and Railwater. Defendants characterize these prior dealings as "isolated" transactions, having no connection to one another or to the agreement now at issue.

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of proof, rather than the movant. *Behagen v. Amateur Basketball Ass'n of U.S.A.*, 744 F.2d 731, 733 (10th Cir.1984); *Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir.1982). To determine whether personal jurisdiction should be exercised, a court may receive and weigh affidavits of the parties prior to trial on the merits. *O'Hare International Bank v. Hampton*, 437 F.2d 1173, 1176 (7th Cir.1971). However, if the issue of jurisdiction raised by a motion to dismiss is to be decided on the basis of affidavits submitted by the parties, the plaintiff is required to make only a *prima facie* case of jurisdiction, rather than proving jurisdiction by a preponderance of the evidence. *See Behagen*, 744 F.2d at 733; *Wyatt*, 686 F.2d at 280; *Welsh v. Gibbs*, 631 F.2d 436, 438 (6th Cir.1980). Where the affidavits conflict upon facts bearing upon the issue of jurisdiction, the disputed facts are to be resolved in favor of the plaintiff. *See Behagen*, 744 F.2d at 733; *Nelson by Carson v. Park Industries, Inc.*, 717 F.2d 1120, 1123 (7th Cir.1983); *Wyatt*, 686 F.2d at 280.

In the present action, plaintiff and defendant Schwartz have submitted affidavits to the Court. The plaintiff's president's affidavit states that Schwartz, on behalf of Railwater, initiated contact with him in Oklahoma to advise him of the availability of the used pipe and to inquire of plaintiff's interest in the pipr. Schwartz' affidavit denies that Schwartz or Railwater have solicited any business in Oklahoma or that Schwartz contacted the plaintiff's

president. In light of the above-cited case law, the Court must take the facts as presented by the plaintiff's affidavit to be true. The question then to be considered is whether the plaintiff thus has stated sufficient facts to make a *prima facie* case for this Court to exercise personal jurisdiction over the defendants under the applicable state long-arm statute.

In determining whether personal jurisdiction exists over a nonresident defendant in a diversity action, the court applies the law of the forum state; in this case, Oklahoma law controls. Oklahoma's most recent version of a long-arm statute is found as tit. 12, Okla.Stat., § 2004(F) (Supp.1984); it provides merely that "[a] court of this state may exercise jurisdiction on any basis consistent with the Constitution of this state and the Constitution of the United States." The previous long-arm statutes, formerly found at tit. 12, Okla.Stat., § 187 and § 1701.03, while enumerating the bases for an Oklahoma court's exercise of jurisdiction, were similarly interpreted by the Oklahoma Supreme Court as being intended to allow the reach of personal jurisdiction of the Oklahoma courts to the outer limits permitted by the due process clause of the United States Constitution. *See Glidewell Motors Inc. v. Pate*, 577 P.2d 1290, 1291 (Okla.1978). Given the broad exercise of jurisdiction permitted under the Oklahoma long-arm statutes, the Court still must ascertain whether the exercise of jurisdiction under those statutes would violate due process.

The constitutional limits of jurisdiction over nonresident defendants have been delineated by the United States Supreme Court in a series of cases. In *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), the Court stated that "due process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* at 316, 66 S.Ct. at 158. In *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct.

1228, 2 L.Ed.2d 1283 (1958), the Court held that the nonresident defendant must have "minimal contacts with the forum state and that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Id.* at 251, 78 S.Ct. at 1238. The Court found in *World–Wide Volkswagen v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), that a due process analysis to determine an appropriate exercise of *in personam* jurisdiction considers whether "the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *Id.* at 297, 100 S.Ct. at 567.

More recently, the Supreme Court has considered a defendant's minimum contacts in terms of the "effect" his actions have upon the plaintiff within the forum state, even though those actions may be performed elsewhere by the defendant. In *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), the Court held that the California courts could properly exercise personal jurisdiction over two Florida journalists in a libel action arising out of their intentional conduct in Florida allegedly calculated to cause injuries in California to a California resident. *Id.* at 789, 104 S.Ct. at 1486. According to the Court, "[a]n individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause the injury in California." *Id.* at 790, 104 S.Ct. at 1487.

In *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), the defendants, who were Michigan residents, entered into a franchise agreement with a Florida-based corporation, which required them to mail monthly payments to the corporation's Florida headquarters. When the defendants failed to make the required payments, plaintiff brought a diversity action against the defendants in federal district court in Florida. The defendants objected to the Florida court's assertion of jurisdiction over them. The Supreme Court, however, held that defendants who "purposefully direct" their

activities at residents of a forum state have "fair warning" that they thus may be subject to that forum's jurisdiction. *Id.* at 472, 105 S.Ct. at 2182. The Court reasoned that

> Moreover, where individuals "purposefully derive benefit" from their interstate activities, it may well be unfair to allow them to escape having to account in other States for consequences that arise proximately from such activities; the Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed.

*Id.* at 473–74, 105 S.Ct. at 2183 (citations omitted). Concluding that jurisdiction was properly exercised "where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State", the Court found the Florida court's assertion of jurisdiction over the Michigan defendants was proper and did not offend due process. *Id.* at 475, 105 S.Ct. at 2184 (emphasis original). The Court, however, cautioned that the mere making of a contract with a resident outside of the forum, in itself, does not create sufficient minimum contacts on which to base jurisdiction. *Id.* at 478, 105 S.Ct. at 2185.

■ The Court turns now to the facts of the present action to determine whether the plaintiff has stated a *prima facie* case for subjecting the defendants to the jurisdiction of this Court. From the affidavit of the plaintiff's president, the Court accepts as true the statement that Schwartz, as the president of Railwater, made the initial contact of the transaction by telephoning the plaintiff's president at plaintiff's offices in Oklahoma, to advise plaintiff of the availability of the pipe. Schwartz, acting on behalf of Railwater, agreed to supply and deliver the pipe to the plaintiff in Oklahoma. Such conduct on Schwartz' and Railwater's part established contacts with a resident of Oklahoma to provide these two defendants with a reasonable expectation that any failure to perform their contract with the plaintiff could subject them to the Oklahoma courts' jurisdiction. Then too, the matter of Schwartz' and Railwa-

ter's admitted retention of the plaintiff's funds, even after the pipe was not delivered to plaintiff, raises a question of the effect of these defendants' intentional conduct upon the plaintiff. It cannot be disputed that depriving the plaintiff of the use of its funds creates an injury to the plaintiff, suffered here in Oklahoma. This Court finds no reason to compel an injured Oklahoma resident to go to Washington to seek redress from Schwartz and Railwater, who, while remaining in Washington, knowingly cause injury here in Oklahoma. The Court thus finds the plaintiff has *prima facie* demonstrated that Schwartz and Railwater have the requisite "minimal contacts" with Oklahoma, and that the Court's exercise of jurisdiction over these two defendants under the Oklahoma long-arm statute does not offend due process under the United States Constitution. The Court, however, reminds plaintiff that having established a *prima facie* case for jurisdiction over Schwartz and Railwater "does not relieve [it] of the burden upon trial of proving the facts upon which jurisdiction is based by a preponderance of the evidence." *Milligan v. Anderson*, 522 F.2d 1202, 1207 (10th Cir.1975).

However, as to defendants Thompson and Lomond, the Court finds essentially no contacts with Oklahoma on which to base jurisdiction over these two defendants. Reviewing plaintiff's allegations, it appears that plaintiff dealt only with Schwartz and Railwater in contracting to purchase the pipe, and sent its two checks to Railwater. Plaintiff has not alleged that Thompson or Lomond were parties to the pipe purchase agreement or received or retained any part of the $20,000., which plaintiff sent to Railwater. Similarly, all exhibits offered by plaintiff to demonstrate an ongoing business relationship show only Schwartz' and Railwater's names, not those of Thompson or Lomond.

The affidavit of defendant Norman Thompson was submitted to the Court. In it, Thompson states that he is the president of defendant Ben Lomond, Inc. Thompson denies that either he or Lomond has transacted any business or entered into any contractual arrangements in Oklahoma.

■ Apparently, the sole ground upon which plaintiff predicates jurisdiction against Thompson and Lomond is its allegation of an undisclosed agency relationship between Schwartz, Railwater, Thompson and Lomond. Plaintiff's proof of its allegation is a statement in its president's affidavit, asserting that some time after the pipe purchase agreement was made, "we [the plaintiff] were advised that the subject pipe was owned by Norman Thompson and Ben Lomond and that Louis Schwartz and Louis Schwartz' Railwater Terminal were undisclosed agents for Norman Thompson and Ben Lomond, Inc." *See* Affidavit of Mike Kahn, ¶ 5. However, unlike the other statement in plaintiff's affidavit which the Court deemed to be true, the Court cannot take the quoted affidavit statement as anything but a conclusion of the plaintiff, based not on personal knowledge of the affiant, but on hearsay information provided by an unknown declarant. Plaintiff has not presented any other factual background in support of its conclusion of an agency relationship among all the defendants.

Schwartz has admitted that Railwater is involved in a joint venture with Lomond to provide financing for the pipe in issue, after the agreement with the plaintiff fell through. Schwartz has similarly admitted that the joint venture between Railwater and Lomond also purchases and resells salvageable materials located in Alaska. However, plaintiff has not suggested that the Railwater–Lomond joint venture was involved in its dealings with Schwartz and Railwater. Without more, the mere fact of a joint venture relationship between Railwater and Lomond is insufficient to impose the personal jurisdiction of this Court upon Thompson and Lomond. Thus, the record presented by the parties' pleadings, exhibits, and affidavits simply does not demonstrate to the Court any basis for finding that defendants Thompson and Lomond have "minimal contacts" with Oklahoma. Accordingly, defendants Thompson and Lomond will be dismissed as defendants in this action.

■ Defendants also assert in their motion that venue of this action is improper. However, they do not cite or discuss any

authority in support of their contention. Venue of an action such as this where jurisdiction is based upon diversity of citizenship is stated at 28 U.S.C. § 1391(a).

A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in the judicial district where all plaintiffs or all defendants reside, or in which the claim arose.

The plaintiff is located in Seminole, Oklahoma, which is well within the Eastern District's boundaries. Additionally, the plaintiff's claims arose in Seminole, Oklahoma, by Schwartz' and Railwater's failure to deliver the pipe to plaintiff or to return plaintiff's money. The Court finds no merit to Schwartz' and Railwater's contention that venue of this action is improper, and denies that portion of the defendants' motion to dismiss.

The defendants' motion to dismiss this action for lack of *in personam* jurisdiction, pursuant to F.R.Cv.P. 12(b)(2), is denied as to defendants Louis Schwartz and Louis Schwartz' Railwater Terminal Co., Inc. That same motion is granted as to defendants Norman Thompson and Ben Lomond, Inc. The defendants' motion to dismiss for improper venue, pursuant to F.R.Cv.P. 12(b)(3) is denied.