Tracy A. SAMUELSON, an individual, and Duane E. Samuelson, and individual, Plaintiffs,

v.

Roy W. HONEYWELL, D.O., an individual, and National Emergency Services, Inc. an Illinois corporation, Defendants.

No. 94–231–S.

United States District Court, E.D. Oklahoma.

Aug. 31, 1994.

Susan L. Gates, Richard A. Groenendyke, Hall, Estill, Hardwick, Gable, Golden & Nelson, Tulsa, OK, and Paul D. Hermann, and Charles R. Bridgers, Atlanta, GA, for plaintiffs.

James K. Secrest, II and Edward J. Main, Tulsa, OK, for defendants.

## *ORDER*

SEAY, Chief Judge.

On April 13, 1994, plaintiff, Tracy A. Samuelson ("Samuelson"), commenced this diversity action against defendants, Roy W. Honeywell, D.O. ("Honeywell"), and National Emergency Services, Inc. ("NES"), asserting negligence and third-party beneficiary claims.[1] In their motions to dismiss before the court, Honeywell and NES raise the following arguments in support of dismissal: (1) the court lacks personal jurisdiction over them, (2) venue is inappropriate in the Eastern District of Oklahoma, and (3) plaintiffs' claims are barred by Louisiana's one-year prescription statute, La.Rev.Stat. § 9:5628. In the alternative, Honeywell and NES seek the transfer of this action to an United States District Court in Louisiana.

In April of 1992 Samuelson was living at Ft. Polk, Louisiana with her husband, a soldier in the United States Army. On April 13, 1992, Samuelson was seen by Honeywell, an osteopathic physician, at the family practice department of the Bayne–Jones Army Community Hospital ("Bayne–Jones") at Ft. Polk. Samuelson had a mass in her right breast. Samuelson claims Honeywell failed to properly diagnose, evaluate, and treat this mass in her right breast. Following her visit with Honeywell, the mass continued to grow

---

1. Samuelson's husband, plaintiff, Duane Samuelson, brings a claim for loss of consortium.

and it was ultimately excised on October 19, 1992, and determined to be cancerous. The cancer has also metastasized into her brain and lungs. Samuelson alleges her condition is terminal and that her life expectancy has been reduced to twelve to twenty-four months. Samuelson claims that but for Honeywell's negligence in diagnosing, evaluating and treating her on April 13, 1992, the cancer would not have metastasized into her brain and lungs. Succinctly stated, Samuelson claims Honeywell's negligence caused her to lose any chance of successfully treating her cancer.

Samuelson alleges NES is a contract-management company that hired Honeywell and contracted with Bayne–Jones to provide medical services through Honeywell. Samuelson claims NES failed to properly supervise and monitor Honeywell and that it was negligent in hiring Honeywell and placing him with Bayne–Jones when it knew or should have known that Honeywell was not competent to render appropriate medical care. Samuelson also claims she is a third-party beneficiary of the contract between NES and Bayne–Jones and that NES breached its obligations to her under the contract when it hired, placed, and retained Honeywell to provide medical services.

*Personal Jurisdiction*

■ On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of proof. *Rambo v. American Southern Ins. Co.,* 839 F.2d 1415, 1417 (10th Cir. 1988). This burden, however, is not a heavy one at the preliminary stage of the litigation. Prior to trial, when the issue of personal jurisdiction is to be decided by way of a motion to dismiss supported by affidavits and other materials, the plaintiff is only required to establish a prima facie case. *Behagen v. Amateur Basketball Ass'n of U.S.A.,* 744 F.2d 731, 733 (10th Cir.1984), *cert. denied,* 471 U.S. 1010, 105 S.Ct. 1879, 85 L.Ed.2d 171 (1985). The allegations of the complaint must be taken as true to the extent that they are uncontroverted by a defendant's affidavits and, to the extent conflicting affidavits are presented, all factual disputes are to be resolved in favor of plaintiff. *Id.* at 744; *Moran Pipe and Supply Co., Inc., v.*

*Schwartz,* 680 F.Supp. 1499, 1501 (E.D.Okla. 1988).

■ In a diversity action, the law of the forum determines the existence of personal jurisdiction over a defendant. *Yarbrough v. Elmer Bunker & Assocs.,* 669 F.2d 614, 616 (10th Cir.1982). Under Oklahoma law a single due process analysis is utilized to determine the extent of personal jurisdiction over a nonresident defendant. Oklahoma's long-arm statute provides that "[a] court of this state may exercise jurisdiction on any basis consistent with the Constitution of this state and the Constitution of the United States." Okla.Stat.Ann. tit. 12, § 2004 F.

■ The general test for determining whether a state may exercise personal jurisdiction under the federal Constitution is well established:

"A federal court sitting in diversity 'may exercise personal jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and the forum state.' *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980) (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)). 'The defendant's contacts with the forum State must be such that maintenance of the suit "does not offend 'traditional notions of fair play and substantial justice.'"' *World–Wide Volkswagen, supra,* 444 U.S. at 292 [100 S.Ct. at 564–65] (quoting *International Shoe,* 326 U.S. at 316, 66 S.Ct. at 158 (quoting *Milliken v. Meyer,* 311 U.S. 457, 463 [61 S.Ct. 339, 343, 85 L.Ed. 278] (1940))). The sufficiency of a defendant's conduct must be evaluated by examining the defendant's conduct and connections with the forum state to assess whether the defendant has 'purposefully avail[ed] itself of the privilege of conducting activities within the forum State.' *Hanson v. Denckla,* 357 U.S. 235, 253 [78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283] (1958)."

*Rambo,* 839 F.2d at 1417 (quoting *First City Bank, N.A. v. Air Capitol Aircraft Sales, Inc.,* 820 F.2d 1127, 1130–31 (10th Cir.1987)). The nature of a defendant's contacts must be

such that the defendant could reasonably anticipate being haled into court in the forum state. *World–Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. at 567.

■ In the context of a corporate defendant, such as NES, jurisdiction may be either general or specific. Specific jurisdiction references a suit which "arise[s] out of" or "relate[s] to" the defendant's contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 1872 n. 8, 80 L.Ed.2d 404 (1984). General jurisdiction, on the other hand, references a suit where the alleged injury is unrelated to the defendant's contacts with the forum state. *Id.* at 414 n. 9, 104 S.Ct. at 1872 n. 9; *see Perkins v. Benquet Consol. Mining Co.,* 342 U.S. 437, 445–46, 72 S.Ct. 413, 418–19, 96 L.Ed. 485 (1952). In this case, it is beyond doubt that plaintiffs' claims against NES implicate the court's general jurisdiction because the claims against NES are unrelated to its contacts with Oklahoma. Plaintiffs' negligence and third-party beneficiary claims against NES evolve from the placement of Honeywell in the Bayne–Jones institution to perform medical services. NES participation in the contractual arrangements with both Honeywell and Bayne–Jones resulted in Honeywell performing medical services in the state of Louisiana, not Oklahoma. The only contacts NES had with Oklahoma were three contractual arrangements with Oklahoma institutions which are totally disconnected with the parties and events of this litigation.

■ A defendant's contacts with the forum state must be greater in a general jurisdiction suit than in a specific jurisdiction suit. For general jurisdiction, the general business contacts of the defendant are analyzed to determine whether these contacts are "continuous and systematic", *Helicopteros,* 466 U.S. at 415, 104 S.Ct. at 1872, to the extent that the corporate defendant could reasonably anticipate being haled into court in the forum state. *See World–Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. at 567.

■ In support of its motion to dismiss for lack of personal jurisdiction, NES has submitted the affidavit of Karen Chadwick ("Chadwick"), coordinator of risk management for NES. Chadwick's affidavit establishes the following relevant facts with respect to NES: NES is an Illinois corporation with its principal place of business in Tiburon, California. NES contracts with hospitals and other medical institutions to locate physicians and other medical personnel who will provide medical services at those institutions. NES also contracts with the physicians to provide those services to the institutions. On August 7, 1991, NES contracted with Honeywell to provide professional services at institutions under contract with NES. On the Physician Agreement signed by Honeywell and NES, Honeywell listed a DeRidder, Louisiana, address. NES is licensed to do business in Oklahoma and has, in the past, contracted with medical institutions to locate physicians and other medical personnel for such institutions. NES entered into a contract with an institution in Purcell, Oklahoma, which expired in May, 1991, and with an institution in Ardmore, Oklahoma, which expired in November, 1991. Following the termination of the Ardmore contract in November, 1991, NES had no contracts with Oklahoma institutions until September, 1992, when it contracted with the Ft. Sill Military Reservation in Comanche County, Oklahoma. The Ft. Sill contract expired in February, 1993. Since the expiration of the Ft. Sill contract, NES has not entered into any contracts to locate physicians for Oklahoma institutions.

In response to the motion by NES, plaintiffs do not contest the facts as set forth above by the court and as contained in Chadwick's affidavit.[2] Rather, plaintiffs submit that the following facts support this court's jurisdiction over NES: (1) NES is authorized to do business in Oklahoma, (2) under Oklahoma's statutory scheme, NES has an agent in Oklahoma that is authorized to accept notice and service of process, and (3) since 1991 NES has entered into three contracts with institutions in Oklahoma to locate physi-

---

**2.** Plaintiffs do, however, contest Chadwick's statements which characterize the nature of the relationship between NES and Honeywell as an independent contractor relationship as opposed to an employee/employer relationship.

cians and other medical personnel at those institutions. The court finds these contacts on the part of NES are not the type of continuous and systematic corporate activities sufficient to subject NES to the general personal jurisdiction of the State of Oklahoma.

The court rejects plaintiffs' attempt to equate compliance by NES with Oklahoma's statutory requirements for conducting business in Oklahoma with acquisition of personal jurisdiction over NES on matters unrelated to the activities of NES in Oklahoma. Plaintiffs' argument is inconsistent with the 'minimum contacts' principles of *International Shoe* and is not supported by subsequent Supreme Court decisions. *See International Shoe,* 326 U.S. at 316–19, 66 S.Ct. at 158–60; *Perkins,* 342 U.S. at 444–48, 72 S.Ct. at 417–20. In *Perkins,* the Supreme Court addressed the situation of Ohio's assertion of general personal jurisdiction over a Philippine corporation which maintained an office in Ohio during the Japanese occupation of the Philippine Islands. After a thorough 'minimum contacts' analysis which considered the continuous and systematic activities conducted in Ohio by the corporations's president and general manager, the Supreme Court upheld general personal jurisdiction. The Supreme Court refused, however, to find general jurisdiction solely on the basis of a foreign corporation's compliance with statutory prerequisites for conducting business in the forum state. After alluding to the 'minimum contacts' principles of *International Shoe,* the Supreme Court held:

> The amount and kind of activities which must be carried on by the foreign corporation in the state of the forum so as to make it reasonable and just to subject the corporation to the jurisdiction of that state are to be determined in each case. *The corporate activities of a foreign corporation which, under state statute, make it necessary for it to secure a license and to designate a statutory agent upon whom process may be served provide a helpful but not a conclusive test.*

*Perkins,* 342 U.S. at 445, 72 S.Ct. at 418 (emphasis added). Thus, it follows that compliance by NES with Oklahoma statutory requirements for conducting business in Oklahoma does not automatically subject NES to the jurisdiction of the State of Oklahoma in a suit unrelated to its Oklahoma contacts. To hold otherwise would be to do violence to the due process concerns as articulated in *International Shoe:*

> Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment *in personam* against an individual or corporate defendant with which the state has no contacts, ties, or relations.

*Id.* 326 U.S. at 319, 66 S.Ct. at 160; *see Wenche Siemer v. Learjet Acquisition Corp.,* 966 F.2d 179, 183 (5th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1047, 122 L.Ed.2d 356 (1993) ("In short, a foreign corporation that properly complies with the Texas registration statute only consents to personal jurisdiction where such jurisdiction is constitutionally permissible."); *Ratliff v. Cooper Laboratories, Inc.,* 444 F.2d 745, 748 (4th Cir.), *cert. denied,* 404 U.S. 948, 92 S.Ct. 271, 30 L.Ed.2d 265 (1971) ("The principles of due process require a firmer foundation than mere compliance with state domestication statutes.").

Having rejected NES's compliance with Oklahoma's foreign corporation laws as a basis for general personal jurisdiction, the court must still consider if such compliance in connection with NES's other contacts with Oklahoma are sufficient to satisfy due process concerns. As previously set forth above, the record before the court establishes that NES entered into three contracts with Oklahoma institutions between 1991 and 1993 to place medical personnel at such institutions. These contracts, and the attendant correspondence and communications to implement these contracts, are NES's only Oklahoma contacts outside of its registration to do business under Oklahoma law. These contracts were of short duration: the Purcell and Ardmore contracts expired in 1991 and the Ft. Sill contract expired in 1993. These are hardly the type of continuous and sys-

tematic business activities necessary to support the exercise of general personal jurisdiction over NES. Rather, these contacts represent merely isolated, sporadic activity on the part of NES. There is no evidence to suggest that NES operated an office, employed workers, or engaged in other corporate activities in Oklahoma.[3] Thus, the court concludes that neither NES's registration to do business in Oklahoma nor its other contacts with the State of Oklahoma, considered separately or in conjunction, establish a continual presence on the part of NES sufficient to impose general personal jurisdiction. *See Bearry v. Beech Aircraft Corp.,* 818 F.2d 370, 374–77 (5th Cir.1987); *Wenche Siemer,* 966 F.2d at 181–84.

The motion to dismiss for lack of personal jurisdiction filed on behalf of NES is granted.

■ In contrast to the situation with NES, Honeywell's contacts with Oklahoma are greater in number and, on their face, more significant. The extensive record submitted in connection with Honeywell's contacts with Oklahoma need not be set out in detail. Rather, having reviewed the parties' briefs and exhibits, including Honeywell's deposition testimony, and keeping in mind its obligation to resolve all factual disputes in favor of plaintiffs, the court concludes that plaintiffs have established a prima facie case of personal jurisdiction with respect to Honeywell. Consequently, the motion to dismiss for lack of personal jurisdiction filed on behalf of Honeywell is denied.

*Venue*

Honeywell also moves for a dismissal based on improper venue. In a diversity case, venue is determined under 28 U.S.C. § 1391(a), which provides:

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where

any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

Honeywell claims that none of these three alternatives support venue in this court. The court agrees. The court concludes that venue is not appropriate under subsections (a)(1) or (a)(2), and that the "fallback" provision of subsection (a)(3) has no application in the context of this single-defendant suit which clearly may otherwise be brought in a district court in Louisiana.

■ Under subsection (a)(1), Honeywell is a "resident" where he is "domiciled" and makes his permanent home. *Lee v. Hunt,* 410 F.Supp. 329, 332 (M.D.La.1976); *see also Crowley v. Glaze,* 710 F.2d 676, 678 (10th Cir.1983) (state citizenship is the equivalent of domicile under the diversity statute). Honeywell's residence is determined as of the time of the commencement of this action on April 13, 1994. *Lee,* 410 F.Supp. at 332. Notwithstanding the fact that Honeywell may have had contacts with Oklahoma sufficient to allow this court to entertain jurisdiction over him, Honeywell was clearly domiciled in Louisiana when this action was commenced. Honeywell moved to Louisiana in 1990 and he has lived in Louisiana since that time. Honeywell practiced medicine in Louisiana until May 1992 and he has paid income taxes to Louisiana since 1990. Honeywell provided money for the purchase of a house in Louisiana by a friend, Nina Smith, under an agreement allowing him to live in the house should he desire. The record also reflects that since moving to Louisiana in 1990, Honeywell has made numerous purchases of goods and services in Louisiana

---

**3.** Plaintiffs submit the affidavit of Patricia E. Antuna, Administrative Assistant of the Memorial Hospital in Ardmore, Oklahoma, to establish that NES has solicited business from the hospital in the past few years, and as recently as the past three months. Without more, the fact that NES periodically solicited in Oklahoma is of no great weight in determining general jurisdiction. *See Bearry,* 818 F.2d at 376 (the fact that the defendant engaged in a nation-wide advertising program does not support a finding of general jurisdiction).

which reflect his resident status. Honeywell was served with process in Louisiana and is currently living in a rented room in a house in Alexandria, Louisiana.

In his affidavit, Honeywell states that he moved to Louisiana with the "intent and purpose to become a permanent resident and citizen of the State of Louisiana." While the court recognizes that this is a self-serving statement on the part of Honeywell, nothing in the record, including Honeywell's visits to Oklahoma and his other contacts with Oklahoma, negates his continual physical presence in Louisiana and his expressed desire to remain in Louisiana indefinitely. For the most part, the Oklahoma contacts referenced by plaintiffs are either Oklahoma contacts prior to Honeywell's move to Louisiana in 1990 (registering to vote in Okmulgee County in 1982; casting an absentee ballot in 1986 and voting in Oklahoma for last time in 1988; and joining the Moose Lodge in Okmulgee) or Oklahoma contacts after Honeywell's move to Louisiana but before the commencement of this action (obtaining an Oklahoma driver's license in 1992; driving a car with Oklahoma tags which was purchased by one of Honeywell's sons and maintained by another son; purchasing, and renewing through April 1995, an automobile insurance policy through an Okmulgee, Oklahoma, insurance agency; opening a bank account in Okmulgee in 1992; meeting with investigators from the Oklahoma Board of Osteopathic Examiners in Okmulgee in 1992; resigning his Oklahoma osteopathic license in 1993; treating patients in Oklahoma prior to his resignation of his Oklahoma license in 1993; and visiting friends at his former 508 North Prairie, Okmulgee address and utilizing such address for certain correspondence purposes). None of these contacts establish Oklahoma as Honeywell's domicile. At best, they represent residual contacts arising from Honeywell's move to Louisiana and, while they may support plaintiffs' argument for 'minimum contacts', they fall short of establishing Honeywell's domicile in Oklahoma. They do not negate the fact that at the time this action was commenced, Honeywell was physically present in Louisiana (and had been since 1990) and that he has lived there under circumstances which make it objectively reasonable to conclude that he intends to remain there indefinitely. Thus, for purposes of subsection (a)(1), Honeywell "resided" in Louisiana at the time this action was commenced.

Plaintiffs' reliance on subsection (a)(2) merits little comment. Subsection (a)(2) certainly does not apply because plaintiffs' negligence claim against Honeywell involves his diagnosis, care and treatment of Samuelson in Louisiana. Under no construction of plaintiffs' allegations is it possible to say that a substantial part of these events occurred in Oklahoma.

Finally, in relying on subsection (a)(3), plaintiffs essentially make the argument that venue is appropriate because Honeywell is subject to the personal jurisdiction of the court. Plaintiffs argue that since they have established personal jurisdiction over Honeywell (or, as the court held above, a prima facie case of personal jurisdiction) they have established venue under subsection (a)(3). The court finds that plaintiffs are mistaken in their interpretation of subsection (a)(3) for two reasons.

First, contrary to plaintiffs' argument, venue and personal jurisdiction are distinct and independent issues. *Driscoll v. New Orleans Steamboat Co.*, 633 F.2d 1158, 1159 n. 1 (5th Cir.1981). The mere fact that personal jurisdiction may be appropriate with respect to Honeywell does not mean venue is likewise appropriate. Second, subsection (a)(3) has been interpreted as not applying to single-defendant cases for the reason that to do so would be to render subsections (a)(1) and (a)(2) superfluous. A persuasive commentary on the subject provides:

The third criterion for cases in which jurisdiction is founded only on diversity of citizenship, as it was adopted in 1990, allowed venue to be laid in "a judicial district in which the defendants are subject to personal jurisdiction as [of] the time the action is commenced". This provision could only be described as curious. It seemed to extend to all defendants in all diversity actions the piggybacking of venue on personal jurisdiction that Congress introduced with its 1988 amendment to

§ 1391(c) relating only to corporate defendants. Unlike the third option for federal-question cases, clause (3) for diversity cases was not limited to situations in which there is no other district in which the action may be brought.

On its face the 1990 version of (a)(3) allowed venue to be laid in any district in which the defendants are subject to personal jurisdiction. In multiple-defendant cases, this result was not too objectionable. If there is some district in which all the defendants are subject to personal jurisdiction, that probably is an appropriate forum. But (a)(3) made no sense in cases in which there is only one defendant. If (a)(3) applied to those cases, then (a)(1) and (a)(2) were wholly superfluous. There would be no need to inquire where the defendant resides or where the claim arose if venue is always proper in any district in which defendant is subject to personal jurisdiction. And since (a)(3) had no limiting language, since unlike (b)(3) it was not made a fallback provision, the effect would have been again to allow a broader choice of venue in diversity cases than in federal-question cases. This would restore the very anomaly that the Federal Courts Study Committee had hoped to end. The use of the plural "the defendants" in (a)(3) was interesting. The use of the plural made it possible to interpret (a)(3) as applicable only in multiple-defendant cases. This avoided the senseless results that application of (a)(3) to all diversity cases would have produced.

Fortunately in 1992 Congress corrected the mistake it had made in 1990. Section 504 of the Federal Courts Administration Act of 1992 amends 28 U.S.C. § 1391(a)(3). It now allows venue in a diversity case to be laid in "a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought." This makes it clear—as must always have been intended—that (a)(3) is a fallback provision, similar to (b)(3), and that it can be used only if there is no district in which venue can be laid under (a)(1) or (a)(2).

15 C. Wright, A. Miller and E. Cooper, *Federal Practice and Procedure*, § 3802.1, at 5 (1994 Supp.) (footnotes omitted). *See U.S. Fidelity and Guar. Co. v. Mayberry*, 789 F.Supp. 901, 903–05 (E.D.Tenn.1992); *Harrison Conference Services, Inc. v. Dolce Conference Services, Inc.*, 768 F.Supp. 405, 408 (E.D.N.Y.1991).

As this authority indicates, the addition of the phrase "if there is no district in which the action may otherwise be brought" necessarily limits the application of subsection (a)(3) to multiple-defendant actions. The "fallback" provision of (a)(3) would come into play only if no district can be established on a residential or transactional basis in a multiple-defendant case. For single-defendant cases, however, making venue appropriate in any district where the defendant is subject to personal jurisdiction would render subsections (a)(1) and (a)(2) superfluous and would be inconsistent with a reading of the entire statute. *Mayberry*, 789 F.Supp. at 904. Consequently, subsection (a)(3) cannot provide a basis for venue in this now single-defendant case. Honeywell's motion to dismiss for lack of venue is granted.

*Conclusion*

Based on the foregoing reasons, the motion to dismiss for lack of personal jurisdiction filed on behalf of NES is granted and the motion to dismiss for lack of venue filed on behalf of Honeywell is granted. This action is dismissed in its entirety without prejudice.[4]

**IT IS SO ORDERED.**

---

4. In light of the court's dismissal based on jurisdiction and venue, there is no need to address the alternative requests for dismissal under the Louisiana one-year prescription for medical malpractice actions, La.Rev.Stat. § 9:5628, or transfer under 28 U.S.C. § 1404(a).